| | |
|---|---|
| **J&H BUSINESS INSTITUTE CORP. AND D&L OIL & GAS, LLC (TEXAS),** <br><br> *Plaintiffs* <br><br> vs. <br><br> **D&L OIL & GAS, LLC (ARKANSAS), DARRELL MADDING, AND MATT LOBENE,** <br><br> *Defendants* | Civil Case No. 24-cv-3292 <br><br> IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

J&H Business Institute Corp. ("J&H") and D&L Oil & Gas, LLC ("DTX") (collectively "Plaintiffs") file this Original Petition, complaining of Defendants D&L Oil & Gas, LLC ("DAR"), Darrell Madding, and Matt Lobene (collectively "Defendants"), and in support thereof, respectfully show the following:

### I. INTRODUCTION

1. Plaintiffs provided Defendants with more than $1,300,000 in funds for the development of oil and gas properties in Texas and elsewhere that Defendants represented that they owned and operated. Defendants did not own or operate the properties and did not provide Plaintiff DTX with the oil production that was promised. Defendant DAR later contractually agreed to fully pay roughly

$1,760,000 but failed to do so. As a proximate cause of Defendants' fraud and breaches of contract, Plaintiffs lost a substantial amount of profits and incurred significant expense, more than $2,150,000

## II.  PARTIES

2. **Plaintiff J&H Business Institute Corp.** is a Texas corporation having its principal place of business in Harris County, Texas.

3. **Plaintiff D&L Oil & Gas, LLC (Texas) ("DTX")** is a Texas Limited Liability Corporation having its principal place of business in Harris County, Texas.

4. **Defendant D&L Oil & Gas, LLC ("DAR")** is an Arkansas limited liability company, located in El Dorado, Arkansas.

5. **Defendant Darrell Madding** is an individual who resides at 208 Osprey Drive, Hot Springs National Park, Arkansas 71913.

6. **Defendant Matt Lobene** is an individual who resides and may be served at 8215 SW 72nd Ave, Apt. 522, Miami, Florida 33143

## III. JURISDICTION AND VENUE

7. Jurisdiction is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in the United States District Court for the Southern

District of Texas pursuant to 28 U.S.C. § 1391(b)(2). The Defendants do substantial business in Texas, operate oil and gas leases in Texas, and own and operate oil and gas equipment in Texas.

## IV. FACTS

**A. DEFENDANT DAR INDUCED PLAINTIFF J&H TO PARTICIPATE IN A JOINT VENTURE TO DEVELOP OIL AND GAS WELLS**

9. In July 2020, DAR and its owners, Darrell Madding and Matt Lobene (collectively, "Defendants"), approached Plaintiff J&H about participating in a joint venture to develop oil and gas properties in Louisiana and East Texas that Defendants claimed to own.

10. Defendants Madding and Lobene induced Plaintiff J&H to invest significant capital into the proposed joint venture by misrepresenting critical facts about Defendants' rights and capabilities to develop the oil and gas properties.

11. Defendants Madding and Lobene misrepresented that Madding was the sole inventor of patented pneumatic pumping equipment and that DAR was the intellectual property holding company.

12. Defendants Madding and Lobene also misrepresented that they, either individually or through DAR, owned over 1,000 oil wells in Louisiana and East Texas. According to Defendants, these oil wells could be made operational with an infusion of capital by funding the manufacturing and installation of dozens of patented pneumatic pumps. Once these wells were operational, Defendants claimed

3

production would meet or exceed three to five net barrels of oil per day per well.

13. To bolster their misrepresentations and create the appearance of credibility, Defendant Madding and Lobene provided a "Patent Status" letter to Plaintiff J&H discussing the technical aspects of the pumps, claiming the patent had been filed in 2018, and promising that future related patents would be filed. Later, Plaintiff J&H would discover that the actual inventor was Gary Sommese and that the patent had been filed in 2016.

14. Defendants Madding and Lobene also presented to Plaintiff J&H a Production Report of some wells they claimed to own in Louisiana and invited J&H to visit the location and observe the wells. Later, Plaintiff J&H would discover that the wells and Production Report belonged to someone else entirely and that Defendants had doctored the Production Report to reflect DAR's name and logo to pass off as their own. Defendants' invitation to visit the wells was an invitation to trespass upon another's property.

15. Based on the totality of Defendants' representations, Plaintiff J&H agreed to participate in a joint venture to develop the oil and gas wells. The joint venture DTX was formed, which was 50% owned by Plaintiff J&H and 50% owned by Bicor Petroleum Solutions, LLC, a company owned by Defendant Madding. The DTX operating agreement was executed on July 14, 2020 (the "Agreement").

16. Relying on Defendants' representations that Defendants owned

patented pumping equipment and over a thousand oil wells, Plaintiff J&H, through Plaintiff DTX, provided over $1,300,000 in capital to fund the venture—$900,000 of which were direct capital investments and $400,000 of which were loans to cover DAR's costs. Defendants claimed they could manufacture and install at least forty (40) patented pumps for $900,000.

**B.    PLAINTIFFS DISCOVERED DEFENDANTS' DECEIT**

17.    After Plaintiffs were induced to make the initial deployment of capital and after attending several more meetings with Defendants, Plaintiffs observed that Defendants Madding and Lobene had suspicious gaps in their expertise and could not intelligently discuss the operations and functions of the pumping system they claimed to have invented. During meetings with industry experts, Defendants Madding and Lobene were unable to answer technical questions about the patented pumps and repeatedly dodged questions under the pretext of trade secrets.

18.    Prompted to investigate, Plaintiffs later determined that the wells they were invited to visit actually belonged not to DAR but rather to Fitzgerald Operations ("Fitzgerald"), a Louisiana-based operator.

19.    Defendants later claimed DAR purchased the wells from Fitzgerald and that the documents confirming DAR's ownership had not been completed due to Covid-related delays.

20.    But this too was false. Douglas Gaines, the owner of Fitzgerald, had

5

never met the Defendants and certainly had not sold them any properties. The Production Report reflecting Defendants' operations at the oil wells were thus fraudulent, and Defendants' offer for J&H's owners to visit the oil well locations was in fact an invitation to trespass on Mr. Gaines's property.

21. In reality, Mr. Gaines had purchased the pneumatic pumps from an associate of Defendant Madding, who in turn had purchased the pumps from the actual inventor and patent holder, Gary Sommese.

C. **DEFENDANTS ARE CONFRONTED WITH THEIR MISREPRESENTATIONS**

22. When confronted with Plaintiffs' discovery that DAR misrepresented its ownership interests and patent ownership, Defendants claimed the issues were likely the result of miscommunication. They assured Plaintiff DTX that the capital had been correctly deployed to install the pumps.

23. However, in response to demands by Plaintiff DTX for a detailed accounting of capital spent, Defendants conceded that, instead of using J&H's funds to source and install forty pumps, Defendants instead distributed a portion of the capital to previous, unrelated investors in a Ponzi-like fraud. According to Defendants, the repayment of prior investors left only enough funds to source and install nineteen pumps (less than half of the promised total).

24. Defendants also claimed that the oil production would shortly materialize and promised the first payments in October of 2020. As October came

and went, no such payments were made.

25. After failing to pay for months, Defendants claimed in January 2021 that the wells were not performing to expectation, and they would move the pumps to a different field in Texas. A $50,000 deposit from Plaintiff J&H's invested capital was purportedly used for this purpose, although the exact fields and locations were never disclosed by Defendants despite multiple demands.

### D. DEFENDANT DAR EXECUTED TWO NEW AGREEMENTS PRIORITIZING REPAYMENT TO PLAINTIFF DTX

26. On March 1, 2021, Plaintiff DTX and Defendant DAR executed the first Refund & Fee Agreement ("First Refund Agreement").

27. In the First Refund Agreement, Defendant DAR acknowledged that Plaintiff DTX's considerable capital contributions resulted in the manufacture and installation of at least 15 pumps in Louisiana fields. Defendant DAR promised to repay to DTX the amount of $1,387,358, and to do so upon DAR's receipt of any profits or sales. Defendant DAR promised to treat Plaintiff DTX with the "highest priority above and beyond any other creditors, lenders, partners, liabilities, or obligations."

28. Defendant DAR also promised an initial payment to Plaintiff DTX in the amount of $50,000 within 48 hours of the execution of this First Refund Agreement with the further balance of $1,337,358 to follow within 45 calendar days. Under the agreement, if the entire balance payment was not made within 45 days, a

further payment in an amount equaling average monthly "WTI price of oil times 1600" would be made to Plaintiff DTX, and any delays beyond 60 days would represent a default by Defendant DAR. In the case of default, the owners of DAR (Defendants Madding and Lobene) agreed to become personally liable for the payment obligation.

29. While Defendant DAR made a small initial payment soon after the First Refund Agreement was signed, it failed to continue making payments as promised.

30. One year later, on March 1, 2022, the parties executed the second Refund & Fee Agreement ("Second Refund Agreement"). The Second Refund Agreement replaced the First Refund Agreement and again acknowledged that Plaintiff DTX had already invested considerable capital into Defendant DAR for the purchase and installation of the pumps.

31. This time, Defendant DAR contractually agreed to pay $1,764,358 to Plaintiff DTX. Defendants agreed that, upon the sale of certain assets owned by Defendant DAR, Defendants would distribute all sale proceeds to Plaintiff DTX "immediately, with highest priority," until the $1,764,358 obligation was satisfied. Defendant DAR had thirty days after receipt of any sale proceeds to pay Plaintiff DTX.

32. Plaintiff DTX agreed that, upon satisfaction of the entire $1,764,358 obligation, it would dismiss any legal actions that may be outstanding against

Defendant DAR in the matter.

33. However, Defendants again failed to comply with the specified timelines and no further capital was returned to DTX.

34. In continuation with the Defendants modus operandi, another settlement agreement was executed on August 7th, 2023 by Darrell Madding, promising monthly payments starting August 30th in the amount of $1,866,100 of which $924,300 was immediately approved, and the remaining balance to be approved after further discussions. Yet again, the Defendants failed to make any payments to the Plaintiff.

35. In December of 2023, the Defendant was served with a DTPA (Deceptive Trade Practices Act) notice by the Plaintiff's attorney. As per the DTPA notice, the Defendant was provided with mandatory 90 days to cure the multiple breaches in agreements and make the agreed upon payments to the Plaintiff. Despite repeated promises, the Defendants again failed to make any such payments.

E. **PLAINTIFF DTX UPHELD ITS END OF THE BARGAIN AT EVERY TURN**

36. Plaintiff DTX allocated capital, generated sales, and performed on every aspect of all agreements between the parties. In fact, Plaintiffs spent significant resources above and beyond the agreement required to help the project succeed, such as a sale of one of Plaintiff DTX's principal's primary residences to generate income to keep operations running.

**F.     TOTAL DAMAGES EXCEED $2,000,000**

37.     Plaintiffs are seeking return of capital deployed with interest, and costs incurred due to Defendants' fraud including legal, accounting, return paid investors by J&H on DAR's behalf, marketing, and procedural costs for a total of at least $2,150,000.

### V. CAUSES OF ACTION

**A.     FRAUD**

38.     Plaintiffs adopt the foregoing paragraphs and incorporate them by reference.

39.     Defendants Madding and Lobene schemed to defraud DTX by misrepresenting their and DAR's patent ownership and rights to operate multiple oil and gas properties. Defendants intentionally misrepresented the facts of the patent ownership and operations of the oil and gas properties as a means to obtain investment funds from Plaintiffs. Additionally, Defendants misled Plaintiff DTX into believing that it would receive payments and profits from oil production on the properties that Defendants claimed to be developing.

40.     Plaintiffs relied upon the fraudulent statements and misrepresentations of the Defendants to their detriment, and in doing so, Plaintiffs provided more than $1,300,000 for the development of the oil and gas leases, including around $900,000 directly to the Defendants for deployment on the oil and gas leases.

41. When Defendants made these misrepresentations to Plaintiffs, they knew the statements were false. Defendants made these misrepresentations with the intent that Plaintiff rely upon them and act upon them, which Plaintiff did to its detriment.

42. Plaintiffs relied upon these misrepresentations and proximately suffered injury as a result.

43. Plaintiff has identified multiple other parties that have been similarly defrauded by Defendants in a similar manner.

**B.     BREACH OF CONTRACT**

44. Plaintiffs adopt the foregoing paragraphs and incorporate them by reference.

45. Defendant DAR entered into multiple Refund and Fee Agreements with Plaintiff DTX and, under the terms of the Second Refund Agreement, Defendant DAR contractually promised to pay the sum of $1,764,358. Defendant DAR also promised that payment would be made from the first amounts of money received from the sale of certain assets and equipment being offered for sale by Defendant DAR.

46. Defendant DAR breached in two ways. First, Defendant DAR failed to provide payment from the first amounts of money received from the sale of certain assets and equipment being offered for sale by Defendant DAR. Second, Defendant

DAR failed to pay Plaintiff DTX the agreed upon sum of $1,764,358.

47. Plaintiff DTX has met or performed all conditions precedent.

48. As a direct result of Defendant DAR's breaches, Plaintiff DTX proximately sustained economic damages.

### C. PROMISSORY ESTOPPEL

49. Plaintiffs adopts the foregoing paragraphs and incorporates them by reference.

50. Defendant DAR promised Plaintiff DTX that it would pay $1,764,358 to DTX if DTX would forgo legal action for the misrepresentations and fraudulent conduct DAR committed with regards to the oil and gas properties that it lied about owning or operating. In complete reliance on the promise to pay by Defendant DAR, Plaintiff DTX reasonably, substantially, and detrimentally relied on Defendant DAR's promises and did not pursue further legal action or collection efforts.

51. Plaintiff DTX's reliance was foreseeable to and known to Defendant DAR. Accordingly, Defendant DAR is estopped from denying the promises to Plaintiff DTX regarding DTX's entitlement to the full refund and repayment of the sums provided to DAR.

52. As a direct result of Defendant DAR's failure to uphold its promises, Plaintiff DTX proximately sustained economic damages.

**D.   DECEPTIVE TRADE PRACTICES**

53. Plaintiffs adopt the foregoing paragraphs and incorporate them by reference.

54. Defendants violated the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA) as set out beginning in Section 17.41 of the Texas Business and Commerce Code by their acts and omissions as referenced and described in the foregoing paragraphs.

55. Defendants committed the described actions intentionally because they had actual awareness that the representations were false and because it knew that Plaintiff would not have entered into any agreement but for Defendants' misrepresentations. Accordingly, Defendants are liable for three times Plaintiffs' economic damages pursuant to the DTPA §17.50(b).

56. Defendants did not exercise reasonable care or competence in obtaining or communicating the referenced information. Plaintiffs justifiably relied on Defendants' representations.

57. Defendants' negligent misrepresentations proximately caused the Plaintiffs' injuries, for which Plaintiff seeks recovery of in this suit.

## VI. ATTORNEY'S FEES

58. As a direct and proximate result of Defendants' breach of contract, and due to the wrongful conduct of Defendants described herein, it has been

necessary for Plaintiffs to employ the undersigned counsel to pursue their rights to redress. Pursuant to Chapter 381 of the TEX. CIV. PRAC. & REM. CODE, Plaintiffs seek and are entitled to all reasonable attorneys' fees incurred in pursuit of Plaintiffs' claims.

## VII.  DAMAGES

59. As a direct and proximate cause of Defendants misrepresentations and breaches, Plaintiffs have been damaged more than $2,150,000.

60. As a direct, foreseeable, and proximate result of the Defendants' breaches, Plaintiffs seek recovery of more than $1,000,000, including all damages suffered by Plaintiffs as a result of Defendants' actions, lost profits, lost use, attorneys' fees, pre- and post-judgment interest to the maximum extent allowed by law, costs and all other relief to which Plaintiffs are entitled.

61. Plaintiffs bring this suit for all costs, damages, expenses, fees, interest and attorney's fees to which they may be justly entitled.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs J&H Business Institute Corp., and D&L Oil & Gas, LLC (Texas), are entitled to and seek the following relief:

(A) damages in an amount to be proven at trial;

(B) treble damages pursuant to the DTPA §17.50(b);

(C) attorneys' fees and costs under any applicable statute or rule;

(D) costs; and

(E) any and all other relief the Court deems just and appropriate.

## IX. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

/s/ Gavin Clarkson
Dr. Gavin Clarkson, Esq.
State of Texas Bar No. 24067335
Clarkson PLLC
1773 Westborough Drive, Suite 927
Katy, TX 77449
DrGavin@Clarkson.LLC

**ATTORNEY FOR PLAINTIFFS**